IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**CHRISTINA LEAS DUNN**                                                                  **PLAINTIFF**

V.                              **CASE NO. 5:25-CV-5107**

**NELNET**                                                                              **DEFENDANT**

**OPINION AND ORDER**

Now before the Court are Defendant Nelnet's Motion to Dismiss (Doc. 10), which the Court previously took under advisement, and *pro se* Plaintiff Christina Leas Dunn's Motion to Declare Nelnet in Noncompliance (Doc. 58), Motion to Compel and for Sanctions (Doc. 59), and Motion for Clarification (Doc. 62). Each of these motions is fully briefed.

This case concerns Ms. Dunn's student loan debt and Nelnet's collection efforts and reporting of the same. Ms. Dunn concedes that she took out the student loans at issue around 2009. However, she believes, in essence, that Nelnet does not have the power to collect on this debt or report it to credit bureaus because Nelnet has not shown her the right paperwork. This belief stems from earlier bankruptcy proceedings. In 2013, Ms. Dunn filed for Chapter 13 bankruptcy in this district. *See In re Christina Leas Dunn*, No. 5:13-BK-73596 (Bankr. W.D. Ark. 2013). Nelnet, who claims to be the authorized servicer of her student loans, filed a proof of claim. Ms. Dunn filed an objection asserting that Nelnet's proof of claim did not have adequate supporting documentation connecting Nelnet to any debt owed by Ms. Dunn. *Id.* ECF 40. Nelnet did not respond to Ms. Dunn's objections or appear at the hearing thereon, and the bankruptcy court sustained her objection. *Id.* ECF 89, ¶ 1. Nelnet filed an amended proof of claim, which Ms. Dunn

1

objected to for failing to resolve the original deficiencies. *Id.* ECF 142. The Court again sustained the objection. *Id.* ECF 218. Nelnet did not file a second amended proof of claim. About a year later, in 2015, Ms. Dunn voluntarily dismissed her bankruptcy petition. *Id.* ECF 306. No bankruptcy plan was confirmed, and no money was disbursed to creditors. *Id.* ECF 309.

Eight years later in 2023, Ms. Dunn sent a letter to Nelnet asserting that, pursuant to the bankruptcy court's order sustaining her objections, Nelnet did not have "standing" to collect on her student loan debt. (Doc. 2-2). Nelnet continued making efforts to collect on Ms. Dunn's loans and notified her of its determination that her credit records, including the outstanding student loan debt, were accurate. (Docs. 2-3 & 2-8). This lawsuit followed.[1] Ms. Dunn accuses Nelnet of fraud and deceptive trade practice under Arkansas law and of violating the Fair Debt Collections Practices Act ("FDCPA"). Nelnet asked the Court to dismiss all her claims under Rule 12(b)(6). (Doc. 10). After the hearing on this and other motions, in consideration of Ms. Dunn's position as a *pro se* litigant, the Court directed Nelnet to produce "the document(s) authorizing it to service Ms. Dunn's loan." (Doc. 57, p. 5).

Nelnet timely responded with a number of documents, including its contract with the Department of Education to service student loans, the result of a search in the National Student Loan Data System identifying Nelnet as the loan servicer for Ms. Dunn's loans, Ms. Dunn's payment history to Nelnet for the loans, and correspondence between Nelnet and Ms. Dunn in 2011 through 2013. The Court does not consider these

---

[1] Ms. Dunn also sued the credit bureaus for reporting her student loan debt. The Court previously dismissed all claims against the credit bureaus. *See* Doc. 57.

2

documents for purposes of Nelnet's Motion to Dismiss (Doc. 10), but will revisit them when it reaches Ms. Dunn's motions. *Noble Sys. Corp. v. Alorica Cent.*, LLC, 543 F.3d 978, 982 (8th Cir. 2008) ("When ruling on a motion to dismiss under Rules 12(b)(6) . . . , a district court generally may not consider materials outside the pleadings.").

To avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As the Court will discuss below, Ms. Dunn's claims do not survive Nelnet's motion regardless of whether Nelnet has proved its authority to service Ms. Dunn's debt because factual allegations supporting unrelated elements of each of her claims are absent. But Ms. Dunn also makes claims about the current legal status of her student loan debt—that it is void or, alternately, unenforceable by Nelnet. For Ms. Dunn's benefit as a *pro se* litigant, the Court will endeavor to clarify why her legal conclusions to this effect are incorrect or irrelevant to her case against Nelnet.

Ms. Dunn's initial theory of this case was that the bankruptcy court's orders sustaining her objections to Nelnet's proof of claim voided said claim. This is incorrect for at least three reasons.

First, a finding that a creditor's proof of claim is deficient does not mean that the creditor "is forever barred from establishing the claim." *Matter of Stoecker*, 5 F.3d 1022, 1028 (7th Cir. 1993). Second, whatever effect the bankruptcy court's orders might have had if Ms. Dunn had completed a Chapter 13 plan, she did not do so. "[A] Chapter 13 case cannot bring about any permanent reordering of property and contract rights, partial or comprehensive, until the debtor meets a threshold requirement: entitlement to a discharge, by 'complet[ing] . . . all payments under the plan' pursuant to 11 U.S.C. § 1328(a)." *In re Scheierl*, 176 B.R. 498, 505 (Bankr. D. Minn. 1995). Third, the bankruptcy proceedings would not have voided Nelnet's interest even if Nelnet filed no proof of claim at all and Ms. Dunn subsequently completed a Chapter 13 plan because "[s]tudent loans are not ordinarily dischargeable under Chapter 13." *In re Bender*, 368 F.3d 846, 847 (8th Cir. 2004) (citing 11 U.S.C. §§ 523(a)(8), 1328(a)(2)).

Ms. Dunn has also claimed ignorance of Nelnet's ownership or servicing authority of the debt and is attempting to place the onus on Nelnet to prove its interest. Her chief complaint on this front is that Nelnet failed to produce the original promissory note and a chain of assignments between Bank of America (who made the loan) and itself. She does not affirmatively allege that Nelnet is *not* the authorized loan servicer—just that it *might not* be because it has not proved that it is. But a plaintiff, by filing a lawsuit, cannot force a defendant to produce *evidence* of the lawfulness of its conduct before the plaintiff has even *alleged* conduct that violates the law. This is exactly the kind of fishing expedition

that Rule 12(b)(6) is meant to prevent. Where, as here, Ms. Dunn has haled Nelnet into court, Nelnet has no burden to preemptively prove the validity of a debt. Instead, Ms. Dunn must allege facts supporting the conclusion that Nelnet's conduct in connection with the debt violated the law. She has not done so.

But even assuming Nelnet has no enforceable interest in Ms. Dunn's student loans, her claims still fail.

Ms. Dunn first claims that Nelnet committed fraud and fraudulent misrepresentation. Under Arkansas law, fraud has five elements:

> (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance.

*Tyson Foods, Inc. v. Davis*, 347 Ark. 566, 580 (2002). Fraudulent misrepresentation has the same elements. *Wofford v. Goslee*, 2001 WL 1507303, at *3 (Ark. Ct. App. Nov. 28, 2001). Ms. Dunn has not made out the fourth or fifth elements, justifiable reliance on the representation resulting in damage, because she has not relied on Nelnet's representations. Instead, she has denied their veracity. *Dugan v. Cureton*, 1 Ark. 31, 41 n.1 (1837) ("If a party to whom a misrepresentation was made knew it to be false he can claim nothing on account of it."). Her claims are based on harm she suffered because nonparties like banks relied on Nelnet's representations to assess Ms. Dunn's creditworthiness. But she cannot assert a fraud claim based on the reliance of others. "The maker of a fraudulent misrepresentation is not liable to one who does not rely on that misrepresentation. This is a lack of causal relation in its simplest form." *MFA Mut. Ins. Co. v. Keller*, 274 Ark. 281, 285 (1981).

5

Her statutory fraud claims are also defective. She cites three Arkansas statutes, though she does not identify particular claims within them, but the Court will nonetheless discuss each. First, she cites Arkansas Code § 5-37-227, which prohibits various forms of identity fraud and theft. Section 5-37-227 is primarily a criminal provision, although it does permit private enforcement as available under the Arkansas Deceptive Trade Practices Act ("ADTPA").[2] *Id.* § 5-37-227(g)(2). Assuming Ms. Dunn has a cause of action under § 5-37-227, she has not alleged facts showing a violation. Section 5-37-227 forbids using another person's identifying information "to create, obtain, or open a credit account," skimming payment cards or transferring payment information without authorization, and obtaining another person's identifying information without authorization and using it for any unlawful purpose. None of the facts Ms. Dunn has alleged could conceivably fit within this statute.

---

[2] While a lay person like Ms. Dunn may expect that anyone can sue someone else for breaking the law, it's a bit more complicated than that. Instead, lawmakers decide who gets to sue for violations of a particular law. Some laws, like criminal laws, can only be enforced in court by the government. The victim of a crime cannot prosecute the perpetrator. Other laws, like the ADTPA, can be enforced by certain private citizens. The ADTPA allows suit by a "person who suffers an actual financial loss as a result of his or her reliance on the use of a practice declared unlawful" by the ADTPA. Ark. Code Ann. § 4-88-113(f)(1)(A). A person who does not suffer an actual financial loss because of a deceptive trade practice cannot sue the deceitful trader. Take, for example, the case of *Parnell v. FanDuel, Inc.*, 2019 Ark. 412 (2019). There, the plaintiff opened an account on FanDuel, a sports-betting website, and deposited $200 in his account after seeing a FanDuel advertisement telling "new subscribers that if they deposited $200 into their account, FanDuel would match their deposit with $200." *Id.* at *2–3. FanDuel did not match his deposit. *Id.* The Arkansas Supreme Court held that the plaintiff had no cause of action under the ADTPA even if the ad was deceptive because he had not suffered an actual loss—he could just withdraw the $200 he had deposited. *Id.* at *5–6.

Second, she cites Arkansas Code § 5-37-201, which criminalizes forgery. This provision has no private enforcement mechanism—it is just a criminal statute. Ms. Dunn cannot sue to enforce this statute.

Third, Ms. Dunn cites the entire ADTPA, Arkansas Code § 4-88-101 *et seq.* She does not identify any specific ADTPA provision under which she is suing. But under any provision, private enforcement is available only to a "person who suffers an actual financial loss as a result of *his or her reliance* on the" deceptive practice. Ark. Code Ann. § 4-88-113(f)(1)(A). As with her fraud claims, Ms. Dunn has not alleged that *she* relied on Nelnet's alleged misstatements, and she cannot sue under the ADTPA based on harm caused to her by the reliance of others.

Finally, Ms. Dunn brings various claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e–g. Each of these provisions applies only to a "debt collector." "Debt collector" is a carefully defined term in the FDCPA. It expressly excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F).

Ms. Dunn has not asserted that her student loans were in default at the time the loan holder obtained them. Accordingly, she has not alleged facts sufficient to support a reasonable inference that Nelnet is liable for violating the FDCPA. *See Somlar v. Nelnet Inc.*, 2017 WL 35703, at *3 (E.D. Mo. Jan. 4, 2017).

Ms. Dunn asks the Court to grant her leave to file an amended complaint. Under Rule 15(a)(2), the Court "should freely give leave [to amend] when justice so requires." "A district court may appropriately deny leave to amend where there are compelling

reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005). "[P]arties should not be allowed to amend their complaint without showing how the complaint could be amended to save the meritless claim." *Wisdom v. First Midwest Bank*, 167 F.3d 402, 409 (8th Cir. 1999).

Here, Ms. Dunn has made no such showing. Months have passed since Ms. Dunn received Nelnet's documentation, during which she has filed other motions but not sought leave to amend or explained what additional facts or claims could save her case. Moreover, amendment would be futile. Having filed her original complaint and made admissions on the record, she cannot amend her complaint to assert facts within her knowledge that are inconsistent with her prior allegations and admissions. *See Wagstaff & Cartmell, LLP v. Lewis*, 40 F.4th 830, 841 (8th Cir. 2022) (upholding finding of bad faith where a party "attempt[ed] to change some admissions to denials on material allegations made in the [c]omplaint" (second alteration in original)).

With respect to her Arkansas fraud and statutory claims, she cannot now claim justifiable reliance on Nelnet's statements when her previous allegations and admissions show knowledge of their purported falsity.[3] With respect to her FDCPA claims, she

---

[3] To the extent Ms. Dunn wishes to amend her complaint to assert claims based on payments made to Nelnet in reliance on its purportedly false assertions that it is entitled to collect her student loan payments, those claims would be time barred. The statute of limitations is three years for common law fraud and five years for the statutory claims. *Dupree v. Twin City Bank*, 300 Ark. 188, 192 (1989); Ark. Code Ann. § 4-88-115. The alleged invalidity of Nelnet's interest became known to Ms. Dunn at the latest by 2015 when she dismissed her 2013 bankruptcy case, a decade before this litigation was filed.

admitted at the hearing that she took out these loans and that she made payments on them before her 2013 bankruptcy petition. The Court sincerely doubts that Ms. Dunn could assert that her loans were in default at the time Nelnet began servicing them without running afoul of Federal Rule of Civil Procedure 11(b). Nelnet's Motion to Dismiss (Doc. 10) is **GRANTED**.

Moving on to Ms. Dunn's more recent filings, she asks the Court to declare Nelnet in noncompliance with the Court's order to produce documentation (Doc. 58); to compel Nelnet to produce "the signed promissory note(s), valid allonge(s), and complete chain of assignment for Plaintiff's alleged loans" and to sanction Nelnet if it fails to comply (Doc. 59);[4] and to clarify whether the Court's order required Nelnet "to produce loan-specific documentation establishing its authority to service Plaintiff's individual loans, as opposed to generic servicing contracts and database entries" (Doc. 62).

As previously described, Nelnet timely provided, among other things, its servicing contract, Department of Education records identifying Nelnet as the servicer of record for Ms. Dunn's specific loans, and records of Ms. Dunn's payments to Nelnet. Nelnet contends that it need not and cannot prove it is the loan holder because it is, as it has always maintained, merely the authorized loan servicer. Ms. Dunn believes these documents are inadequate to establish Nelnet's authority for a number of reasons.

First, she asserts that a promissory note and valid chain of assignment are required before a creditor can enforce a debt. That may be true, but this is not an

---

[4] Nelnet points out in its response to this motion that none of Ms. Dunn's cited case law actually exists, and Nelnet believes the citations to be AI hallucinations. (Doc. 60, ¶ 15). Ms. Dunn admits in her reply that the citations were incorrect and claims to have corrected them (Doc. 61, ¶ 7), but she did not file an amended or corrected motion.

enforcement action by Nelnet against Ms. Dunn—it is Ms. Dunn's action against Nelnet. Nelnet was directed to provide "the document(s) authorizing it to service Ms. Dunn's loan," not the documents it would need in an enforcement action.

Second, Ms. Dunn complains that Nelnet has failed to provide any borrower-specific documentation because, she says, the borrower-specific entries from the National Student Loan Data System are inadmissible hearsay. A document does not need to be admissible to be discoverable or to be responsive to a discovery order. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Nelnet's production complied with the Court's Order, and Ms. Dunn has not alleged a plausible claim, so she is not entitled to further discovery. Ms. Dunn's Motions (Docs. 58, 59 & 62) are **DENIED**.

While the Court is sympathetic to the difficult position of student loan borrowers, it does not appreciate Ms. Dunn's attempt to game her way to a get-out-of-debt-free card. She admits she took out these loans, and she admits she did not repay them. Nelnet is not breaking the law by reporting as much.

For the foregoing reasons, Nelnet's Motion to Dismiss (Doc. 10) is **GRANTED**, and Ms. Dunn's Motions (Docs. 58, 59 & 62) are **DENIED**. This case is hereby **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED** on this 25th day of February, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE